Oscar Maples and Charlotte Maples v. Commissioner.
Maples v. Commissioner
Docket No. 59136.
United States Tax Court
T.C. Memo 1956-217; 1956 Tax Ct. Memo LEXIS 77; 15 T.C.M. (CCH) 1130; T.C.M. (RIA) 56217; September 26, 1956
Harlow B. King, Esq., and R. E. McGannon, Esq., for the petitioners. Claude R. Sanders, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioners' income tax for 1948 in the amount of $9,809.74. The sole contested issue is whether for the taxable year 1948 petitioners sustained a deductible loss on the voluntary demolition of a building and, if so, the amount of such loss. Other issues raised by the petition have been settled by stipulation. Findings of Fact The facts that are stipulated are found accordingly. Petitioners are husband and wife and resided in Independence, Missouri, during the taxable year 1948. They filed their joint Federal income tax return for that year with the then *78 collector of internal revenue for the sixth district of Missouri at Kansas City. Since petitioner Charlotte Maples is involved herein solely by reason of her marriage to Oscar Maples, the latter will be referred to as petitioner. In the fall of 1947 and for some 12 months prior thereto petitioner was a partner in a Studebaker automobile dealership operating under the name of Van Zant-Maples in Bartlesville, Oklahoma. In October 1947 petitioner, upon being advised by the Ford Motor Company that he could obtain a Lincoln-Mercury dealership in Independence, Missouri, provided he obtained adequate sales facilities there, went to Independence to seek such a proper location. Petitioner contacted several real estate men, including Rodney Choplin, requesting that they locate business property properly zoned for commercial use and located in the business area of Independence within two or three blocks of the Square. No existing building suitable for petitioner's prospective business was located. Petitioner then sought to locate vacant property suitable for the construction of an auto sales agency building containing a minimum floor area of about 10,000 square feet, as required by the Ford *79 Motor Company. In December 1947 petitioner located such desirable property. The property was owned by Herman and Augusta Twiehaus, hereinafter referred to as the Twiehaus property, and consisted of two contiguous lots, each 82 1/2 feet wide and 165 feet deep, located on the southeast corner of White Oak and North Main Streets, two blocks north of Independence Square. Both lots were nearly level and were about five or six feet above street level. The corner lot, lot 8, was vacant, and the lot adjacent to the south and nearer the Square, lot 9, was improved with a two-story L-shaped brick residence which had been constructed in 1851. The building was a central hall plan and had a gable roof, front and back porches, and solid oak floors. The ground floor was occupied by the owners and contained a living room, dining room, bedroom, kitchen, and bath. The second floor had a bath and two rooms, which were rented for $6 each per week. In the preliminary negotiations for the Twiehaus property petitioner attempted to purchase only the corner lot and about 30 feet of the adjacent lot, exclusive of the old brick house, but the owners insisted upon selling all the property. On December 17, 1947, petitioner *80 entered into a written contract with the owners for the purchase and sale of both lots and improvements thereon for a total consideration of $30,000, payable $1,000 down and the balance upon delivery of the deed. The contract provided for the proration of rent and the assignment of insurance in force with proration of unearned premiums. The contract further provided that the sellers would grade the property to the street level and would remove trees located in the parkway area contiguous to North Main Street upon which the property fronted. On December 26, 1947, petitioner and the sellers entered into a supplemental contract which permitted petitioner to execute a promissory note secured by deed of trust on the property in the sum of $25,000 representing the then unpaid balance of the purchase price. The contract permitted the sellers to remain in possession of the downstairs level of the brick residence until the due date of April 1, 1948, or until 30 days after payment if paid prior to maturity. The contract also provided that the income from rental of the rooms should be prorated to date of delivery of the deed. On December 30, 1947, petitioner was granted a franchise by the *81 Ford Motor Company to sell Lincoln and Mercury automobiles in the Independence, Missouri, trade area. In early January 1948 petitioner opened for business in temporary quarters on North Liberty Street in Independence. On January 3, 1948, petitioner acquired title to the Twiehaus property and on that date executed a promissory note in the amount of $25,000 secured by a first deed of trust mortgage on the property purchased. Petitioner received no rent between December 26, 1947, and January 3, 1948, from the Twiehaus property, or at any time after taking possession thereof since petitioner permitted the owners to keep the rent in exchange for upkeep and maintenance on the house. After petitioner took possession the former owners and the tenants renting the upstairs rooms moved from the house. Petitioner then instructed his real estate agent to seek new tenants. Several doctors inspected the premises but were unwilling to rent unless extensive remodeling was done. No remodeling was ever undertaken and the property was never advertised for rent. The house remained vacant throughout 1948. In early January 1948 petitioner employed Robert P. Weatherford, Jr., a licensed architect, to *82 prepare plans and drawings and to supervise construction of a building suitable for the operation of petitioner's Lincoln-Mercury dealership on the Twiehaus property. The first plans approved by petitioner called for a modern auto sales building of brick and glass 111 1/2 feet wide to be erected on lot 8 on the north corner and a portion of the adjacent lot. Subsequently the width of the proposed building was changed to 102 feet to save on construction costs, as petitioner was short of funds. While the new building was being completed, petitioner continued operations at his temporary location. Prior to his coming to Independence, petitioner had never operated a used car lot but had disposed of his used cars by selling them wholesale. In March 1948 petitioner sold five used cars, six in April, and sixteen in May. In June 1948 petitioner rented from Alex Klein a vacant lot for $100 per month and used it for the storage and sale of used cars. In June 1948 construction was started on the new building. Thereafter, and during the completion of the building, brick, cement, and other building materials were stored on lot 9 and in the house located thereon. On July 7, 1948, the promissory *83 note in the principal amount of $25,000 was cancelled and the mortgage released. A new note in the amount of $9,000, representing the then unpaid balance, was executed and delivered by petitioner to the sellers. This note was secured by a first deed of trust mortgage on the south 50 feet of lot 9 and the improvements thereon. In October 1948 petitioner was advised by Klein that he had been offered a higher rent for his lot. In December 1948 Klein gave petitioner notice to vacate by February or March of 1949. Petitioner thereupon decided to demolish the brick house and use the site for a used car lot. On December 15, 1948, the promissory note in the principal amount of $9,000 was paid in full and the mortgage on lot 9 and the house thereon was released of record. On December 28, 1948, petitioner transferred title to the brick house to E. P. Bowles for a consideration of $1 and the agreement by Bowles to remove the same and grade the site to street level within 60 days. Bowles razed the building and graded the land to street level. Thereafter petitioner occupied the premises as a used car lot in conjunction with his automobile agency. On the joint return for 1948 petitioners *84 claimed a deduction of the sum of $11,665.67 as a business loss resulting from the disposition of the brick house. The loss was computed as follows: Cost
$12,500.00
1948 depreciation
$833.33
Proceeds of sale
1.00
834.33
$11,665.67 The respondent disallowed the entire deduction. At the time of the acquisition of the property in question petitioners had no intention of demolishing the brick house located thereon. At the time of the acquisition of the brick house it had a fair market value of $6,000 and a remaining useful life for purposes of depreciation of 15 years. The transaction transferring title to the brick house on December 28, 1948, did not constitute a bona fide sale or exchange of the property. The petitioners sustained a deductible loss on the demolition of the brick house in the taxable year 1948. Opinion LEMIRE, Judge: The primary question presented is whether in the taxable year 1948 petitioners sustained a deductible loss on the voluntary demolition of a residence located on property purchased by petitioners for the purpose of erecting a building suitable for an automobile sales agency. The respondent contends that no demolition *85 loss is deductible since it was the intention of the petitioners at the time of the acquisition of the property to demolish the building to make the site available for a used car lot in conjunction with the sales agency. The rule is well established that if real estate is acquired on which a building is located and the building is to be and is razed with a view of erecting another building thereon, no deductible loss results. Regulations 111, sec. 29.23(e)-2; ; ; . The intention of the taxpayer on the date of acquisition is the determining factor. ; , affd. ; . Petitioner Oscar Maples, after having acquired a franchise to sell Mercury and Lincoln cars in Independence, Missouri, located suitable property for the erection of a building for the conduct of his automobile sales agency. The property consisted of two adjoining *86 lots with a foot frontage of 165 feet. Title to the property was in one ownership. On the south lot was a brick residence. Petitioner attempted to purchase the vacant corner lot and about 30 feet of the south lot, but the owners refused to sell less than the entire property. The owners occupied the first floor of the building as a residence, and the second floor was rented. Petitioners entered into a contract to purchase both lots. At the time of the purchase it was petitioners' plan to remodel the residence for commercial rental purposes to doctors or dentists. Petitioner instructed his real estate agent to rent the building and made efforts himself to obtain tenants. The plan was not carried out because the cost of remodeling to meet the requirements of prospective tenants was too great. Petitioner also endeavored to rent the building without remodeling. In view of the uncontradicted testimony of the petitioner, which is corroborated by the testimony of several disinterested witnesses, we are convinced that at the time of acquisition of the property the petitioners had no intention of demolishing the building, and that the change in the plan and the decision to have the building *87 razed was brought about as a result of subsequent events. So holding, we are required to consider the respondent's alternative position that the loss claimed by petitioners is excessive because the fair market value of the building was not in excess of $3,250. On their joint return petitioners allocated $12,500 of the total consideration of $30,000 as the cost of the building, and computed the loss on the basis of having made a sale of the building for $1. We find no merit in the contention that a bona fide sale was effected. The loss sustained was one arising from the demolition of the building and requires a determination of its fair market value. Petitioners offered the testimony of two real estate operators who expressed the opinion that the fair market value of the building was $12,500 at the time of acquisition. The respondent offered no expert opinion evidence but, on cross examination of petitioners' witnesses, educed testimony to the effect that a comparable vacant corner lot across the street sold on October 7, 1946, for approximately $150 per front foot, and that the value of real estate in Independence, Missouri, was rising in 1947 and 1948. After evaluating all the *88 testimony it is our considered judgment that the value of the land in question was not less than $24,000. Therefore, the remaining cost, or $6,000, is to be allocated as the fair market value of the building demolished. The petitioners contend and respondent concedes that the building at the time of acquisition had a further useful life of 15 years from the date of purchase. The deductible loss sustained on the demolition of the building in the taxable year 1948 is the fair market value of the building on the date of purchase less proper depreciation and the cost of demolition. The amount of the deductible loss will be recomputed in accordance herewith. Decision will be entered under Rule 50.